LOUIS A. ZAYAS, ESQ. (LZ-1881)
LAW OFFICES OF LOUIS A. ZAYAS, LLC
8901 Kennedy Boulevard, 5th Floor
North Bergen, N.J. 07047
Counsel for the Plaintiff
Tel: (201) 977-2900

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENID SANTIAGO, | ) |
| | ) |
| Plaintiff | ) |
| | ) Civil Action No.:_____ |
| | ) |
| v. | ) |
| NEW YORK & NEW JERSEY PORT | ) |
| AUTHORITY, TUNNEL & BRIDGE | ) **COMPLAINT** |
| AGENT GREGORY NOA, ANTHONY | ) |
| FITZGERALD, TIMOTHY MCGOVERN, | ) |
| SERGEANT FLEMMINGS, CAPTAIN | ) |
| BURNS, CHIEF CHARLES TORRES, sued | ) |
| individually, jointly and severally, | ) |
| | ) |
| Defendants. | |

The Plaintiff, Enid Santiago, by and through her attorney, Louis A. Zayas, Esq, of the Law Offices of Louis A. Zayas, LLC, alleges as follows:

## INTRODUCTION

1. This is a civil action brought by the Plaintiff for declaratory and injunctive relief, compensatory and punitive damages to redress violations of his civil rights secured under the Title 42 U.S.C. ' 1983.

## PARTIES

2. Plaintiff Enid Santiago is a Hispanic female hired as a New York & New Jersey Port Authority police officer in October 17, 2008, (hereinafter "P.O. Santiago"). At all times

1

relevant to this complaint, P.O. Santiago resided in the City of Belleville, County of Essex. New Jersey.

3. Defendant New York & New Jersey Port Authority is a corporation organized by virtue of New York and New Jersey law, and pursuant to that law, is to be known and distinguished by the name "Port Authority." Defendant Port Authority is sued to affect the full declaratory, injunctive, compensatory damages demanded by the Plaintiff.

4. Defendant Gregory Noa ("TBA NOA") was and is still employed at all relevant times by Port Authority as a Tunnel & Bridge Agent. TBA Noa, a white male, is sued in his individual capacity for the purpose of effecting the compensatory and punitive damages demanded by the Plaintiff as alleged herein.

5. Lieutenant Anthony Fitzgerald ("Lt. Fitzgerald") was and is still employed at all relevant times by Port Authority as a law enforcement officer. Lt. Fitzgerald, a white male, is sued in his individual capacity for the purpose of effecting the compensatory and punitive damages demanded by the Plaintiff as alleged herein.

6. Lieutenant Timothy McGovern ("Lt. McGovern") was and is still employed at all relevant times by Port Authority as a law enforcement officer. Lt. McGovern, a white male, is sued in his individual capacity for the purpose of effecting the compensatory and punitive damages demanded by the Plaintiff as alleged herein.

7. Sergeant Flemming ("Sgt. Flemming") was and is still employed at all relevant times by Port Authority as a law enforcement officer and Plaintiff's supervisor. Sgt. Flemming, a white male, is sued in his individual capacity for the purpose of effecting the compensatory and punitive damages demanded by the Plaintiff as alleged herein.

8.      Captain Burns "("Captain Burns")" was and is still employed at all relevant times by Port Authority as a law enforcement officer and Plaintiff's supervisor. Captain Burns, a white male, is sued in his individual capacity for the purpose of effecting the compensatory and punitive damages demanded by the Plaintiff as alleged herein

## FACTS

9.      As described more fully herein, Defendant Port Authority and named defendants others have engaged in a continuing pattern and practice of harassment, disparate treatment, discrimination and retaliation against Hispanic, minorities, and female employees, including, but not limited to assessing unfair and harsher discipline, instigating arbitrary and unfounded Internal Affairs charges and investigations, discriminatory work assignments, discriminatory performance standards and evaluations, and unfair, closer and more stringent monitoring and oversight.

10.     On October 17, 2008, Port Authority hired P.O. Santiago as a recruit for the Police Academy Class of 111. P.O. Santiago successfully completed the twenty-eight week police academy and was sworn as a Port Authority police officer on April 13, 2009. As is customary, P.O. Santiago was placed on one year probation.  After completing one year of employment, P.O. Santiago's status as a probationary police officer was to become permanent, meaning that Port Authority could terminate her employment only upon a showing of good cause after an administrative hearing.

11.     On October 6, 2009, P.O. Santiago was assigned to the Lincoln Tunnel. P.O. Santiago's duties and responsibilities relating to the Lincoln Tunnel assignment included, but not limited to, supervising the safe and lawful movement of vehicular traffic going in and out of the Lincoln Tunnel.   While on duty, P.O. Santiago responded

3

to an "over-height" alarm, which meant that the trailer truck was too tall to enter actual tunnel. In an effort to direct the trailer truck away from the tunnel, P.O. Santiago notified her command that she was going to help turn around the trailer. While P.O. Santiago was performing her police duties in directing traffic, TBA Noa arrived at the scene and began to direct traffic creating unnecessary confusion and danger.

12. As a Tunnel and Bridge Agent, TBA Noa is not authorized to perform such police functions as directing traffic. Notwithstanding his complete lack of authority to engage in such police related functions, TBA Noa deliberately ignored P.O. Santiago's order to stop interfering with her police duties. TBA Noa refused to stop. P.O. Santiago requested assistance. In response to her call, two white Port Authority police officers , P.O. Anthony Giardullo and P.O. Pimenta, arrived at the scene to assist P.O Santiago, including helping her deal with TBA Noa who was insulting and obstructing P.O. Santiago's official duties. As a result of TBA Noa's unauthorized actions in directing traffic and deliberate defiance of P.O. Santiago's instruction to cease and desist, the aforementioned trailer truck crashed into another vehicle creating a dangerous situation in the Lincoln Tunnel.

13. After her duty shift ended, P.O. Santiago filed a complaint on a hand-written memorandum to Captain Burns alleging that TBA Noa had interfered with her duties as a police officer causing a motor vehicle accident. P.O. Santiago requested an official investigation regarding TBA Noa incident. Because of the chain of command, P.O. Santiago was prohibited from complaining to the press.

14. The purpose of P.O. Santiago's complaint against TBA Noa, which was not required by her official duties, was intended to place Port Authority on notice

that TBA Noa's conduct represented an imminent danger to the safety and security of millions of motorist who regularly use the Lincoln Tunnel every year.  P.O. Santiago further sought to petition the governing body of Port Authority, by and through the appropriate chain of command, to initiate corrective action to prevent any further security breaches.

15. Having worked for the Department of Homeland Security, P.O. Santiago was aware that the Lincoln Tunnel is widely seen as a terrorist target because of its terrible costs in terms of human life but its devastating consequences to New York City's financial lifeline if one of its principal transportation routes is destroyed.   P.O. Santiago's complaint to Port Authority constitutes protected speech because her complaint regarding TBA Noa's reckless interference with law enforcement operations in the Lincoln Tunnel touches upon a matter of public interest and concern.

16. By virtue of P.O. Santiago's complaint to Port Authority, P.O. Santiago was, in fact, petitioning the governing body of Port Authority to address her grievance against TBA Noa, an activity protected by the First Amendment.

17. When the defendants learned of P.O. Santiago's complaint regarding his conduct on October 6, 2008, he and the named individual defendants caused Port Authority to initiate a sham internal affairs investigation to retaliate against P.O. Santiago for having complained about such security shortcomings by Port Authority.  In particular Sergeant Flemming and Captain Burns intentionally filed misleading if not false information in connection with their sham internal affairs investigation. The defendants Lt. McGovern and Fitzgerald, acting in concert with defendants Sgt. Flemming and Captain Burns, further sought to silence and discredit P.O. Santiago and others by defaming her professional reputation by alleging that she had lied in her

5

police report regarding the motor vehicle accident. In furtherance of the scheme to discredit and disparage P.O. Santiago, TBA Noa and others, acting in concert with him, accused P.O. Santiago and the two white officers of "conspiring" to file false information in their respective police reports.

17.     Upon information and belief, TBA Noa has a history of hindering police operations in and around the Lincoln Tunnel. Despite this documented history of misconduct and obstruction, Port Authority has failed to take any remedial action to correct the problem, in part, because of TBA Noa's political connections to top management in Port Authority. As a result of TBA Noa's political connections, Port Authority protects TBA Noa from disciplinary actions.

18.     Upon information and belief, Port Authority Sgt. Flemming, Captain Burns, Lt. Fitzgerald and Lt. McGovern, acting in concert with each other and other known and unknown individuals, attempted to induce the Hudson County Prosecutor's Office to initiate criminal charges against P.O. Santiago for falsify police records. Because of the lack of actionable evidence to initiate criminal proceedings, the Hudson County Prosecutor's Officer refused to file any criminal charges against P.O. Santiago. During the sham investigation, the individual defendants, including Lieutenant Fitzgerald and McGovern, recklessly defamed P.O. Santiago by accusing her of "lying" and "falsifying records" in connection with her motor vehicle report of the aforementioned accident.

19. On or about April 13, 2010, Port Authority terminated P.O. Santiago, one day before she was to become a permanent police officer.   In violation of its rules and regulations, Port Authority terminated P.O. Santiago without an opportunity to be heard. Although P.O. Anthony Giardullo and P.O. Pimenta were involved in the same incident with TBA Noa and filed similar complaints as P.O. Santiago, the white Port Authority police officer were not disciplined,

reprimanded, defamed, or terminated as P.O. Santiago.  Prior to her termination from Port Authority, P.O. Santiago was performing her duties and responsibilities in a satisfactory manner

20. On or about April 20, 2010, a high ranking police supervisor, Chief Charles Torres defamed P.O. Enid Santiago during a routine roll call attended by numerous police officers. Upon information and belief, Chief Torres disclosed the results of the aforementioned internal affairs investigation, which was confidential, and stated that P.O. Santiago "lied" and/or was otherwise dishonest as a police officer. Chief Torres further stated that the reason P.O. Santiago was terminated was because of P.O. Santiago having filed a false police report, referring to the filing of P.O. Santiago's police report regarding the motor vehicle accident involving TBA Noa. During that roll call, Chief Torres did not accuse any of the white police officers of lying or otherwise filing false police reports.

21. Because of the individual defendants' defamatory remarks and given the reason for P.O. Santiago's termination, namely acts of lying and dishonesty, P.O. Santiago's liberty and property interests in her professional reputation and prospective employment has been damaged. Because of defendants' actions, P.O. Santiago is unable to secure employment as a law enforcement officer.

## FIRST CLAIM FOR RELIEF
## §§ 1981 & 1983
## INDIVIDUAL DEFENDANTS

22. All of the allegations in each of the foregoing paragraphs are incorporated by references as if fully set forth herein.

23. Individual Defendants, Lt. Fitzgerald, Lt. McGovern, Sgt. Flemming,

Captain Burns, Chief Torres and TBA and Noa acting under the color of law, infringed upon Plaintiff right to make and enforce contracts and otherwise enjoy the privileges and rights as a white citizen, as secured under §§ 1981, equal protection under the law, due process, and First Amendment right to free speech and petition the government for redress. Each and every defendant was personally involved in setting in motion Plaintiff's unlawful termination and damage to her liberty and property interest in her professional reputation.

24. Alternatively, the individual defendants who were not personally involved in violating Plaintiff's constitutional rights are liable to Plaintiff for not intervening to stop the aforementioned constitutional violations.

25. As a direct and proximate cause of the aforementioned; Plaintiff was deprived of her federal constitutional civil rights as an alleged herein. All of these rights are secured by the First, Fourth and Fourteenth Amendments to the United States Constitution. As a result of the foregoing, Plaintiff has suffered and will continue to suffer emotional and emotional and psychological damages in an amount to be determined by a jury. Because of individual defendants' willful and malicious conduct, Plaintiff seeks punitive damages in his individual capacity to be determined by a jury.

## II.

### SECOND CLAIM FOR RELIEF
### MUNICIPAL LIABILITIY §§ 1981 & 1983
### PORT AUTHORITY

26. All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

27. Upon information and belief, Port Authority has a policy, custom, practice and usage of discriminating against Hispanics, women and other minorities in the workplace. Port

Authority, for example, disproportionately punishes women and minorities more harshly than white officers for committing the same or worse offenses.

28.     Upon information and belief, Port Authority further has a policy, custom, practice and usage of retaliating against police officers who engage in statutory and constitutionally protected activities such whistleblowing or complaining of unlawful employment practices in Port Authority.

29.     Port Authority knew or should have known of a history of such misconduct but failed to take remedial action to stop it. At all times relevant as alleged in this Complaint, individual defendants were acting pursuant to the aforementioned policy, practice, custom, and usage of Port Authority.

30.     Acting under the color of law, by and through the policy-makers of Port Authority, and pursuant to that official policy or custom and practice, Port Authority intentionally, knowingly, or with deliberate indifference to the rights of the Plaintiff failed to train, instruct, supervise, control and/or discipline the individual defendants and others in the performance of their duties.

31.     As a result of the foregoing, Plaintiff's constitutional rights were violated, the Plaintiff has been made to suffer great anxiety, humiliation, embarrassment and other related injuries that the Plaintiff has suffered and will continue to suffer in an amount to be determined by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that this Court enter an order finding as follows:

(a) That a declaratory judgment be issued that the Plaintiff's rights have been violated as alleged above;

(b) that Defendants violated Plaintiff's civil rights;

(c) that the Plaintiffs recover from the individual Defendants, jointly and severally, compensatory damages, exemplary and punitive damages, attorney's fees, and such other monetary relief as may be deemed appropriate in amounts to be determined at trial;

(d) that the Plaintiffs recover from the Defendants, jointly and severally, prejudgment interest to the maximum extent permitted by law;

(f) and that the Court grant such other and further relief as it deems just and proper.

### JURY TRIAL DEMANDED

Plaintiffs request a trial by jury on all issues so triable.

DATED: July 25, 2011

By: /S/LOUIS A. ZAYAS, ESQ._____
LOUIS A. ZAYAS, Esq. (LZ-1881)