<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ENID SANTIAGO,** <br><br>           **Plaintiff,** <br><br> **v.** <br><br><br> **THE PORT AUTHORITY OF NEW YORK & NEW JERSEY,** *et al.*, <br><br>           **Defendants.** | **Civil Action No. 11-4254 (WJM)** <br><br><br><br> <u>**MEMORANDUM OPINION**</u> |

<u>**FALK, U.S.M.J.**</u>

      This is a two count retaliation and civil rights lawsuit.  Plaintiff, Enid Santiago—a Hispanic female—was a former probationary police officer employed by the Port Authority.  Defendants are: The Port Authority of New York & New Jersey; Port Authority Tunnel & Bridge Agent Gregory Noa; and Port Authority Law Enforcement Officers Lieutenant Anthony Fitzgerald; Lieutenant Timothy McGovern; Sergeant Tom Flemming; Chief Charles Torres; and Captain Burns.[1]

      Before the Court is Plaintiff's application to compel the depositions of three former Port Authority officials—William Baroni, David Wildstein, and Jerry

---

[1] The Complaint does not provide a first name for Captain Burns.

Speziale—after the close of discovery.  [ECF No. 69.]  Defendants oppose the motion.
[ECF No. 71.]  Oral argument was held on September 24, 2014.  For the reasons stated
below, Plaintiff's  motion is **DENIED**.

## ALLEGATIONS

On October 6, 2009, Plaintiff was assigned police duty at the Lincoln Tunnel.
While on duty, she claims to have responded to an "over-height alarm," which meant that
an oversized trailer truck was attempting to enter the tunnel.  As she was attempting to
direct traffic, Plaintiff claims that a Tunnel & Bridge Agent—Defendant Noa—arrived at
the scene and also began to direct traffic "causing danger and confusion."  Plaintiff told
Noa to stop directing traffic but he refused.  Ultimately, the trailer truck crashed and
caused a hazardous situation at the Lincoln Tunnel.

Following the accident, Plaintiff filed a complaint with the Port Authority and
wanted to petition the Authority to "initiative corrective action."  In response, she claims
that the Port Authority initiated a sham, retaliatory internal affairs investigation against
her that concluded that she had "lied" and "falsified" portions of the accident report.
Plaintiff was terminated on April 12, 2010, shortly before her probationary period was to
end.

The Complaint's first count contains Section 1981 and 1983 claims against the
individual defendants.  Count two is a *Monell* claim against the Port Authority,[2] alleging

---

[2] A Monell claim is a Section 1983 municipal liability claim.  In short, Monell
provides that a municipality can be held liable under Section 1983 for a constitutional

that the Authority has a custom and/or practice of (1) discriminating against "Hispanics, women and other minorities"; and (2) retaliating against police officers who are whistleblowers or file complaints.

**Current Dispute**:

An extended discovery period closed in this case on February 16, 2014.  On March 25, 2014, more than a month after the end-date, Plaintiff submitted a letter seeking to further extend discovery and take three depositions – one of defendant Noa, and those of David Wildstein and William Baroni, who counsel claimed were recently "learned of" witnesses.[3]  Defendants opposed any extension of discovery and all of the depositions sought, arguing Plaintiff had delayed in seeking the depositions; that discovery was closed; and that, in all events, the alleged new witnesses had no involvement in Plaintiff's case and had no relevant information.

On May 22, 2014, the Court held a conference and attempted to resolve the dispute informally pursuant to Local Civil Rule 37.1, which was ultimately unsuccessful.  The parties were permitted to submit supplemental letters, which were received on June 5 (from Plaintiff) and June 16 (from Defendants).  Plaintiff's supplemental submission expands her request to seek a fourth deposition—that of Jerry Speziale, former Deputy

---

violation/injury that directly results from a municipal policy, custom, or practice.  436 U.S. 658, 695 (1987).

[3] Messers. Wildstein and Baroni are former Port Authority officials who have been the subject of extensive media coverage relating to their alleged involvement in what is commonly referred to as "Bridgegate."  See "Fort Lee Lane Closure Scandal," Wikipedia, http://en.wikipedia.org/wiki_Fort_Lee_lane_closure_scandal (last visited September 26, 2014).

Superintendent of the Port Authority Police Department.

## LEGAL STANDARDS

### A.  Extension of Discovery

Rule 16 vests the Court with broad discretion to control and manage discovery. See, e.g., Newton v. A.C. & Sons, Inc., 918 F.2d 1121, 1126 (3d Cir. 1990) ("The intent and spirt of Rule 16 is to allow courts to actively manage the timetable of case preparation."); In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("Matters of docket control and the conduct of discovery are committed to the sound discretion of the district court.").  Pursuant to Rule 16, a scheduling order will only be modified upon a showing of "good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  To establish good cause, the party seeking the extension must show that the deadlines set forth in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension."  Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990).

### B.  Relevance

Pursuant to Fed. R. Civ. P. 26(b), a court may order discovery of any matter relevant to a party's claims or defenses.  See Fed. R. Civ. P. 26(b).  Rule 26 is construed liberally.  See Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J.1981).  Relevance is a broader inquiry at the discovery stage than at the trial stage. See Nestle Food Corp. v. Aetna Cos. & Surety Co., 135 F.R.D. 101, 103 (D.N.J.1990). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P.

4

26(b)(1).  The burden is on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J.2000); see also Nestle, 135 F.R.D. at 104.  Although construed liberally, Rule 26 is not limitless—e.g., the Court may limit discovery when the burden is likely to outweigh the benefits. See Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999).

## DECISION

Plaintiff's incredibly late request merits a review of the discovery period and a timeline of relevant proceedings:

- The Complaint is filed on July 25, 2011.[4]

- Initial Scheduling Order is entered October 12, 2011, closing discovery on March 30, 2012.

- Discovery end-date passes without any disputes being raised or extensions sought.

- April 3, 2012, Plaintiff files, without permission and in violation of Local Civil Rule 37.1, a letter motion to compel discovery.

- From April through June, the parties present numerous discovery disputes.  The Court conducts no less than three conferences to address discovery issues.

- On June 8, 2012, the Court holds a hearing on the record and resolves all

---

[4]  Plaintiff filed a state court complaint alleging CEPA and NJLAD violations on October 10, 2010, which apparently arose from the same set of facts.  The state court complaint was dismissed for failure to comply with notice of claim requirements in June 2011.  Then the federal case was filed.  In July 2013, the Appellate Division affirmed dismissal of the state case and the New Jersey Supreme Court denied certiorari.

remaining discovery disputes.  Plaintiff is granted a 100-day extension of discovery to September 20, 2012.

- On June 25, 2012, Plaintiff files a motion to voluntarily dismiss this case pending the state court appeal, which Defendants oppose.[5]

- On August 8, 2012, District Judge Martini grants the motion and dismisses this case without prejudice.

- In August 2013, after the Appellate Division affirms dismissal of Plaintiff's state complaint, Plaintiff sent a letter to District Judge Martini seeking to reinstate this case.

- On August 26, 2013, Judge Martini reinstates the case.

- On September 18, 2013, the Court enters an Order extending discovery to December 16, 2013.  The Order provides that all discovery disputes must be raised with the Court prior to that date or they would be waived.

- On January 7, 2014, the Court yet again extends discovery, this time to February 16, 2014.  The Order expressly states that no further extensions will be granted.

- The February 16th end-date passes without either party requesting an extension or raising disputes.

- On March 25, 2014, Plaintiff submits a letter seeking to extend discovery until May 2014 to take the depositions of Messers. Baroni and Wildstein.[6]  Defendants

---

[5] See Footnote 3, *supra*

[6] Plaintiff also requested an extension of time to take the deposition of Defendant Gregory Noa.  Despite being a named Defendant, Plaintiff waited until nearly three years after the case was filed to seek Noa's deposition—and did not raise the issue with the

oppose the request by letter of March 26th.

- The Court holds a telephone conference on March 27 and advises Plaintiff's counsel that, in light of the history of this case, the Court was not inclined to extend discovery further or allow any of the depositions, except perhaps that of Defendant Noa.  The Undersigned schedules a conference for April 2nd to formally resolve the issue.

- April 1, 2014, the night before the conference, Plaintiff files a letter on the docket at 5:10 p.m. requesting an adjournment.

- April 2, 2014, Defendants' counsel appears for the conference and Plaintiff's counsel does not.

- April 10, 2014, an Order is issued rescheduling the conference for April 23, 2014.  Plaintiff again requests an adjournment.  The request is granted and the matter is rescheduled for May 22, 2014.

- On May 22, 2014, the Undersigned Magistrate Judge conducts a case management conference and gives preliminary indications on the dispute—e.g., that the request to depose Wildstein and Baroni is out of time and that there has been no showing that they had anything to do with the case.  Additional briefing is authorized.

---

Court until more than a month after discovery closed.  Nevertheless, in order to ensure that the case is decided on the merits and that a complete and appropriate record is presented to the District Judge on any motion Defendant Noa may eventually file, the Undersigned informally recommended to Defendants' counsel to arrange Defendant Noa's deposition.  Defendants acquiesced, and that deposition has been taken.

1.    **The Request to Depose Messers. Wildstein and Baroni is untimely**[7]

**First**, Discovery finally closed February 16, 2014, more than 2½ years after the Complaint was filed.  This was a lengthy discovery period extended multiple times and carrying an admonition that it would not be extended again.  Yet, Plaintiff's letter first raising the present dispute came more than a month after discovery closed.  Plaintiff claims that he noticed the depositions prior to the return date, but, even if true, that is not material.  Nothing changes the fact that no Court-intervention was sought with respect to these depositions until long after discovery closed.  Case law is extensive and clear that a party must move to compel discovery prior to the close of the discovery period or the request is untimely.  See, e.g., Days Inn Worldwide v. Sonia Investments, 237 F.R.D. 395, 397 (N.D. Tex. 2006) (collecting extensive case law and citing 18 cases to the effect with parentheticals, including case law from five separate court of appeals).

**Second,** Plaintiff claims that Messers. Baroni and Wildstein were new witnesses that he learned of in "January 2014."  Nevertheless, he allowed discovery to close in mid-February and waited another month before raising the issue with the Court.  Such inaction, in the face of repeated Court Orders stating discovery would not be further extended and would close on February 16, amounts to waiver of the discovery sought.  Court Orders should mean something.  There is no showing of "good cause" whatsoever

---

[7]   The Court accepts as true Plaintiff's counsel's representations that he did not know of Mr. Speziale and his supposed relevant knowledge until after the close of discovery.  Therefore, the Court does not deny Plaintiff Mr. Speziale's deposition on timeliness grounds.  However, as is discussed herein, permission to take the deposition is denied on relevance grounds.

that would warrant additional discovery.

**Third,** Plaintiff claims the depositions are relevant to his *Monell* claim.  However, if depositions of Port Authority officials were relevant to the *Monell* claim—and not a fishing expedition—presumably they would have been sought years earlier.  Plaintiff filed a Complaint, subject to Rule 11, alleging a Port Authority policy or custom in 2011.  If Plaintiff had information sufficient to plead such a claim three years ago and felt that the directors of the Port Authority were important figures in proving it, he should have been asking for their depositions early in the discovery period.

## 2.  Plaintiff Has Not Shown the Non-Party Witnesses Have Any Relevant Information

Plaintiff has not shown that Messers. Baroni, Wildstein, and Speziale are likely to possess information relevant to *this* case.  This case involves events occurring in 2009 and Plaintiff's termination from the Port Authority on April 12, 2010.  None of these purported witnesses were involved with the Port Authority at the relevant time period.

For example, Mr. Wildstein was not hired by the Port Authority until May 25, 2010, which is <u>after</u> Plaintiff was terminated.  Likewise with respect to Mr. Speziale, who was not hired until August 11, 2010.  In other words, two of the three witnesses Plaintiff would subpoena were not even employed by the Port Authority at the time of the events giving rise to this lawsuit.  They could not have been policy makers, or aware of any policy, that Plaintiff claims existed at the Port Authority since they did not work there.

Mr. Baroni started working at the Port Authority on March 1, 2010, a little more than a month prior to Plaintiff's termination.  However, Plaintiff has not established any

connection between Mr. Baroni's brief employment and this case.

At her deposition, Plaintiff essentially admitted that she had no information suggesting that either Mr. Wildstein or Mr. Baroni had anything to do with her termination, were involved in the decision-making process, or were even aware of it. (Defs.' Br. 3.)  She has never met any of the three individuals and does not specifically allege that any of the three were aware of or involved in the events giving rise to this case.[8]  (Id.)  Nor could she given their lack of involvement with the Port Authority during the time she was employed there.  In short, there has been no showing of a connection between any of the individuals referenced and the allegations in *this* case, which is based on events that occurred before two of the three were even employed by the Port Authority.

This case is about a tunnel accident and an internal affairs investigation, not "Bridgegate."  Plaintiff's 13th hour request for depositions are based on nothing more than rank speculation, and amount to a classic fishing expedition.  See, e.g., Tuno v. NWC Warranty Corp., 552 Fed. Appx. 140, 148 (3d Cir. 2014) (Plaintiff has the "burden to explain why his request was not 'speculative,' lest he be allowed to engage in a 'fishing expedition' to find some evidence to support his claim." (citing Williams v. Beard, 637 F.3d 195, 210-11 (3d Cir. 2011)).

---

[8]  Plaintiff contends that because Mr. Speziale has filed a lawsuit against the Port Authority alleging unlawful retaliation, he must have information relevant to this case. This is not necessarily so.  The operative facts of this case occurred before Mr. Speziale was even employed by the Port Authority.  Moreover, reopening discovery and taking the deposition of every individual who may sue the Port Authority on the chance that person may have some knowledge is an unfeasible, unjustified fishing expedition.

## CONCLUSION

For all of the reasons stated above, Plaintiff's request to compel the subject depositions is **DENIED**.

**s/Mark Falk**
**MARK FALK**
**United States Magistrate Judge**

**DATED: October 1, 2014**