UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ENID SANTIAGO,** | |
| **Plaintiff,** | Civ. No. 2:11-cv-04254 (WJM) |
| v. | |
| **NEW YORK & NEW JERSEY PORT AUTHORITY,** *et al.*, | **OPINION** |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Enid Santiago brings this 42 U.S.C. § 1983 action against the New York and New Jersey Port Authority (hereinafter, "Port Authority") and six of its individual officers (collectively, "Defendants"). Against the individual Defendants, Plaintiff raises claims of First Amendment retaliation, race and gender discrimination, and violation of her due process rights; against the Port Authority, she raises a *Monell* claim. This matter comes before the Court on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

I.     BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff, a Hispanic woman, was formerly employed by Port Authority as a probationary police officer.

In October 2008, Plaintiff was sworn in as a Port Authority as a police officer. ECF doc. 1 (Compl.) ¶ 10. As is customary, Plaintiff was placed on a one-year probation (meaning, among other things, that Port Authority could terminate her employment without an administrative hearing). *Id.* ¶ 10.

On October 6, 2009 (less than one month before her one-year probation period had concluded), Plaintiff was assigned to "supervis[e] the safe and lawful movement of vehicular traffic going in and out of the Lincoln Tunnel." Compl. ¶ 11. While on duty, Plaintiff responded to an "over-height alarm," indicating that an oversized trailer truck was attempting to enter the tunnel. *Id.* ¶ 11. According to Plaintiff, as she began redirecting traffic, Tunnel and Bridge Agent ("TBA") Gregory Noa arrived and also began directing

traffic, which was outside the scope of his TBA duties and interfered with Plaintiff's police duties.  *Id.* ¶ 12.  While the truck was turning around, the truck driver struck another TBA officer's vehicle.  *Id.*

That day, Plaintiff prepared a handwritten motor vehicle accident report (before being directed to do so) addressed to her superior, Captain Donald Burns, in which she blamed Noa for causing the accident.  ECF doc. 89, Ex. C (Report).  She stated that Noa's actions were "hindering police duties" and "harmful to the public," and requested that the incident be investigated.  *Id.*  Two other Port Authority police officers, Paul Pimenta and Anthony Giardullo, also prepared handwritten reports blaming Noa for the accident.  *Id.*, Exs. I, J.

Upon Captain Burns' instruction, the Port Authority's Internal Affairs Bureau conducted a six-month long investigation into the incident.  ECF doc. 89-1 (Defendants' Statement of Undisputed Material Facts ("SUMF")), ¶ 36.  Plaintiff alleges that this was a "sham investigation" where certain officers filed misleading information about her.  Compl. ¶ 16.

During the course of its investigation, Internal Affairs reviewed the three handwritten reports, and concluded that that there were numerous inconsistencies between the officers' accounts.  D's SUMF at ¶¶ 29-35.  Both the driver and the passenger of the truck indicated that Plaintiff alone was directing traffic when the driver struck the other vehicle, and that no other person was directing traffic.  *Id.* ¶¶ 37-48.  After reviewing additional evidence, including radio and phone communications, and interviewing additional witnesses, Internal Affairs ultimately determined that Plaintiff's version of events was not credible and recommended her termination.  *Id.* ¶¶ 36-74, 94.  Specifically, the Port Authority's Director of Public Safety stated that Plaintiff was terminated because he could not trust that she could "conduct herself in a truthful, honest or accurate manner," as required of a police officer.  *Id.* ¶¶ 95-96.  Plaintiff did not receive a hearing because she was not entitled to one as a probationary police officer.  *Id.* ¶ 97.  According to Plaintiff, following her termination, the Chief of Police Charles Torres defamed Plaintiff during a "routine roll call attended by numerous police officers," by disclosing the results of the investigation and stating that she was terminated for filing a false police report.  Compl. ¶ 20.

Officers Pimenta and Giardullo were both charged with violating the Port Authority Rules of Conduct; however, because they are union employees, they are entitled to disciplinary proceedings before termination.  ECF doc. 89, Ex. R (Aff. Of Labor Relations Attorney).  According to Port Authority, it is seeking to terminate both Pimenta's and Giardullo's employments once they have had their hearings.  *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and

admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

## III.   DISCUSSION

Plaintiff raises, against the individual defendants, a First Amendment retaliation claim, race and gender discrimination claims under § 1983 and § 1981, and a due process claim; against the Port Authority, she raises a claim of municipal liability. ECF doc. 1. Defendants move for summary judgment. ECF doc. 89.

### A.   First Amendment Retaliation Claim

Plaintiff alleges that Defendants retaliated against her for exercising her First Amendment rights by filing a handwritten incident report regarding TBA Noa following the truck accident. Defendants are entitled to summary judgment as to this claim because Plaintiff was not engaged in protected First Amendment activity in filing the report.

A public employee's statement is protected First Amendment activity when, *inter alia*, in making it, the employee spoke as a citizen and the statement involved a matter of public concern. *Gorum v. Sessmons,* 561 F.3d 179, 185 (3d Cir. 2009) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006)). A public employee does not "speak as a citizen" when she makes a statement pursuant to her "official duties." *Garcetti,* 547 U.S. at 421 (2006). The Third Circuit has "consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties." *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012); *see also Kimmett v. Corbett*, 554 F. App'x 106, 112 (3d Cir. 2014); *Taylor v. Pawlowski*, 551 F. App'x 31, 32 (3d Cir. 2013).

Here, Plaintiff submitted an incident report to her supervisor complaining of Noa's interference with her duties as a police officer.  Plaintiff informed Internal Affairs that she had been "following the guidelines of [her] senior officer," Officer Pimenta, in submitting the report.  ECF doc. 89, Ex. G (Interview) at PA 110-11.  Plaintiff's superior, Lieutenant Dubelbeiss, also informed Internal Affairs that he had instructed her to submit a handwritten report.  *Id*., at 49-50.  Plaintiff's report is a "complaint up the chain of command" about "misconduct by [another] employee" – a classic example of a statement made pursuant to an employee's "official duties."  *Morris*, 487 F. App'x at 39.  Accordingly, Plaintiff's speech is not protected by the First Amendment, and her retaliation claim fails as a matter of law.[1]

## B.  Discrimination Claims

Plaintiff alleges that, in terminating her, Defendants discriminated against her on the basis of her race and sex.  This claim fails as a matter of law.

Courts apply the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–803 (1973) to discrimination claims.  *Stewart v. Rutgers,* 120 F.3d 426, 432 (3d Cir. 1997).  First, the plaintiff must establish a *prima facie* discrimination case.  *McDonnell Douglas*, 411 U.S. at 802.  To establish a *prima facie* case of race or sex discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination.  *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410–11 (3d Cir. 1999).  Second, if the plaintiff makes this showing, the burden shifts to the employer to prove a nondiscriminatory reason for its actions.  *McDonnell Douglas*, 411 U.S. at 802.  Third, if the employer meets that burden, the plaintiff then must prove that the employer's stated reason is merely a pretext for unlawful discrimination.  *Id*. at 804. The plaintiff at all times bears the ultimate burden of persuasion.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 503 (1993).

Plaintiff has not established a *prima facie* case of discrimination.  Plaintiff has satisfied the first three prongs of the test: (1) as a Hispanic woman, she is a member of a protected class; (2) she was qualified for the position of a probationary police officer, given that she passed the requisite training courses; and (3) she suffered an adverse employment action when she was terminated.  Plaintiff contends that the adverse employment action (*i.e*., her termination) gives rise to an inference of unlawful discrimination because the white male officers involved in the same incident were not immediately terminated.  But the white male officers were not "similarly situated" to Plaintiff: she was a probationary

---

[1] Because the Court has determined that Plaintiff's accident report does not constitute First Amendment speech, the Court does not reach the issue of whether Plaintiff's interest in reporting outweighed the Port Authority's interest in maintaining an efficient police force, or the Port Authority's qualified immunity defense.

employee not entitled to a disciplinary proceeding before termination, while the other employees were union employees entitled to such protections.  *See Blanding v. Pa. State Police,* 12 F.3d 1303, 1309–10 (3d Cir. 1993) (holding that tenured troopers were not similarly situated to a probationary trooper); *Mercado v. Donahoe*, 487 F. App'x 15, 18 (3d Cir. 2012) (holding that white female employee was not similarly situated to Hispanic male employee because she was not a probationary employee).  Moreover, Defendants have provided evidence that they recommended termination of the two white male employees simultaneous to their recommendation that Plaintiff be terminated, and Plaintiff has not refuted this evidence.  Accordingly, Plaintiff has not stated a *prima facie* case of discrimination.  *See Red v. Potter*, 211 F. App'x 82, 84 (3d Cir. 2006) (Plaintiff failed to state a *prima facie* case because employees who were allegedly treated more favorably were not similarly situated).

However, even assuming *arguendo* that Plaintiff has made a *prima facie* case of discrimination, Port Authority has articulated a legitimate, non-discriminatory reason for terminating Plaintiff.  The Port Authority Policy Recruit Guidebook mandates that "[i]f a recruit is found to have been untruthful or dishonest, a recommendation for his/her termination will be forwarded to the Superintendent of Police/Director of Public Safety." *Id.*, Ex. N.  Port Authority conducted a six-month long investigation in which over ten witnesses were interviewed, radio and telephone communications and handwritten statements were analyzed, and ultimately determined that Plaintiff was untruthful in her report of the incident.  As a result, Plaintiff was terminated.

In her opposition, Plaintiff contends that Defendants relied on inaccurate, "sham" statements about her and incorrectly determined that she was untruthful in her incident report.  This contention is insufficient to establish pretext.  *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011) ("Inaccuracy does not establish pretext . . . .  The issue is not whether the [employer's] decision was unwise or even correct but whether the [employer] unlawfully discriminated against [Plaintiff.]"); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (Once an employer provides a non-discriminatory justification for its actions, a plaintiff can only survive summary judgment by presenting "sufficient evidence to meaningfully throw into question, *i.e.*, to cast substantial doubt upon," the employer's proffered reason for its action . . . the employee cannot carry her burden by showing that the employer's decision was wrong or mistaken).  The Court therefore concludes that Defendants are entitled to summary judgment as to Plaintiffs' discrimination claims.

### C.  Due Process Claim

Plaintiff alleges that her due process rights were violated by Defendants' damage to her "reputation and career in law enforcement."  ECF doc. 92 (P. Opp) at 39.  Not so.

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d Cir. 2006).  For public

employees, this test is satisfied when "an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Id.* (internal quotations omitted). To satisfy this test, it must be alleged that the purportedly stigmatizing statement were made publicly. *Bishop v. Wood*, 426 U.S. 341, 348 (1976); *Chabal v. Reagan*, 841 F.2d 1216, 1223-1224 (3d Cir. 1988).

Plaintiff's due process claim fails because she has not produced any evidence that the allegedly false statements were disseminated to the public. To be sure, Plaintiff alleges that Chief Torres disseminated a false statement following her termination during the police officers' "roll call." But this does not constitute a "public statement" for purposes of a due process claim. *See Chabal*, 841 F.2d at 1224 (finding no liberty interest violation because the plaintiff made "no allegation whatsoever that the government communicated to the general public any information regarding the reasons for his dismissal"); *Yu v. U.S. Dep't of Veterans Affairs*, 528 F. App'x 181, 185 (3d Cir. 2013) (finding evidence that people within the organization were aware of the investigation and results "was not publication to the general public."). Accordingly, summary judgment is warranted in favor of Defendants as to this claim.

### D. *Monell* Claim

Finally, Plaintiff alleges that Port Authority has "engaged in a continuing pattern and practice of harassment, disparate treatment, discrimination, and retaliation against Hispanic, minorities, and female employees." Compl. ¶ 9.

As explained in the foregoing section, the individual Port Authority officers are entitled to summary judgment on all claims against them. It is well settled that "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* … liability." *Phillips ex rel. Estate of Phillips v. Northwest Regional Communications*, 391 Fed. Appx. 160, 168 n. 7 (3d Cir. 2010) (citing *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). In light of that rule, Port Authority is entitled to summary judgment on Plaintiff's *Monell* claims.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 22, 2016**